## BECKETT *et al. v.* SELOVER.

Upon an application to sell the real estate of a deceased person to pay debts, the heir may dispute the validity of the claims on which the petition is based, although they have been allowed by the public administrator and Probate Judge.

A judgment at common law is not evidence in an action against the heir.

Under our system, the petition to sell real estate is the substitute for the action against the heir. The latter must be cited, and has a right to be heard.

This proceeding is a simple re-examination of the claim, to test its validity as against the heir.

Where issue has been joined as to the truth of the claim, the creditor may have it tried before the Probate Judge, or certified to the District Court for trial before a jury.

*It seems*, that all the provisions of the law relating to the powers and duties of the public administrator, and inconsistent with the general probate law, are special provisions, which must be given their full force.

The public administrator is an officer of the law. He is entitled to the administration of all estates not otherwise administered, and he has only such powers as are given him by law.

As he is required to give a bond, and take the official oath, it seems to have been the intention of the statute to dispense with the bond and oath required of other administrators in each particular case.

Under the fourteenth chapter of the act concerning the estates of deceased persons, the public administrator has a right, and should at once take possession of the estate of all persons dying without known heirs. This is sustained by the eighty-eighth section of the act.

In both cases he holds as special administrator, and subject to the direction of the Court.

A petition for letters of administration to the Probate Court of a county, describing the deceased as *late a resident of* that county, would seem to conform to the words of the statute.

The public administrator is not entitled to administer upon every estate, and there must be a judicial grant of administration to him in each particular case of which his official commission is not proof; and he must show the grant of administration, like any other administrator.

Where the Court made a regular order that letters should issue to the public administrator, as no bond or oath was required as a condition precedent, the omission to issue letters is not fatal.

Under our system, the real and personal estate vest in the heir, subject to the lien of the administrator for the payment of the debts and expenses of administration.

The heirs of the deceased have a right to go behind the allowance of claims against the estate by the administrator and the approval by the Probate Judge, and to require proof of the original indebtedness, upon the hearing of the petition for the sale of real estate to pay debts.

On the hearing of such petition, it is error in the Probate Judge to refuse to hear testimony that the deceased did not die in the county in which the estate is being administered, and also to refuse to allow the heirs to question the justice of the claims allowed.

APPEAL from the Probate Court of the County of San Francisco.

A. A. Selover, on the seventeenth of September, 1855, present-

ed to the Probate Court of the county of San Francisco, a petition, setting forth, among other things:

That one James Beckett, at the time of his death, and immediately previous thereto, a resident of the said county of San Francisco, died at the city of Sacramento, on or about the tenth of June, 1854, intestate, leaving a large estate.

That the petitioner has no knowledge or information as to who are the heirs of said deceased, but is informed and believes that he is without known heirs, and that the administrator of said estate is also without any knowledge or information as to who are the rightful heirs of said estate.

That the personal property of said intestate is insufficient to pay the debts of said estate.

That the said Beckett died seized of a large amount of real estate, in the county of San Francisco.

That one Samuel Flower is the public administrator for said county, duly commissioned, qualified, and acting, and was such at the time of the death of the said Beckett, and that he has entered into and taken possession of the estate of the said Beckett, deceased, and entered upon the administration of said estate, according to the statute, etc.

That on the thirtieth day of October, 1854, administration of said estate was duly granted to said Samuel Flower, by the order and judgment of this honorable Court, and that the same has never been revoked, and that the said Samuel Flower is the sole legal representative of said Beckett, deceased, known to the petitioner, or of which he has any knowledge or information.

That on the seventh day of June, 1855, in the District Court of the Twelfth Judicial District, one Gregory Yale recovered a judgment against the said Samuel Flower, as administrator of Beckett, deceased, for the sum of two thousand seven hundred and nine dollars, together with interest and costs, which said judgment is in full force, never having been reversed or satisfied.

That petitioner is now the sole owner of said judgment, and that a duly certified transcript thereof has been filed in the Probate Court.

That one Henry H. Byrne, having a claim against said estate of Beckett, deceased, for the sum of fifteen thousand nine hundred and fifty dollars, duly presented the same to said Flower, administrator, which was allowed to him, by the said administrator, on the 4th day of December, 1854.

That on the same day, said claim, so approved, was presented to the Probate Judge, for his approval, and the said Judge duly endorsed thereon his allowance of the same.

That said claim still remains unpaid, either in whole or in part, and that said claim has been duly assigned to the petitioner.

The petition then exhibits the indebtedness of the estate, and also schedules of the property thereof, both real and personal;

and prays for an order directing all persons to appear before the Court, at a period of time not less than four or more than ten weeks from the making of said order, to show cause why an order should not be made, requiring the administrator to sell so much of the real estate of the deceased, as shall be necessary to pay said debts, so outstanding against the deceased, etc.

On this petition, the Probate Court made an order that all persons interested appear before it, on the twenty-second day of October, 1855, to show cause why the order prayed for should not be made, etc.; and that a copy of the order be published for at least four successive weeks, in the daily " Placer Times and Transcript," in the city of San Francisco.

This order, it was proved, was first published in said newspaper on the eighteenth of September, 1855. That the same was also published on the twenty-second day of October, 1855. That said order was not published daily, but only on five days of each week.

On the return day of the order, one Sarah O. Beckett admitted, for the purposes of this suit, to be the widow of the deceased, appeared and filed a written opposition to the petition of the said A. A. Selover.

On the twenty-ninth of October, 1855, Charles Gallagher was appointed by the said Probate Court, the guardian of James J. Beckett, a minor, who for the purposes of this suit, was admitted to be the heir of the said Beckett, deceased.

On the eighth of November, 1855, James J. Beckett, by his guardian, files a written opposition to the petition of A. A. Selover.

The opposition of the widow denied that Flower was at any time the legal administrator of said estate, and asserts that Selover, as the assignee of the Yale and Byrne claims, could have no right to present said claims for payment, and, that the claim of Henry H. Byrne was barred by the Statute of Limitations.

The opposition of the heir contained both objections of law and fact, the former being as follows:

1. That the said petition does not set forth facts sufficient to authorize the order prayed for.

2. That it does not show that the said Selover is a party entitled to petition for a sale of real estate.

3. That it does not show that any administrator of the said estate has been duly appointed and qualified.

4. That it does not appear that the said petitioner has a valid, or any claim against the said estate.

6. That the order to show cause is irregular and insufficient.

The latter, denying all the averments of the petition, and claiming that Byrne's demand was barred by the Statute of Limitations, and that the proof of publication of the order to

show cause was insufficient. The cause coming on for hearing on the twelfth of November, 1855, before the Probate Court, the counsel for widow and heir moved to dismiss the petition, which being denied, they asked that the several issues created by their oppositions, be certified to the District Court of the Twelfth Judicial District for trial, which was also denied by the Court. The testimony introduced by petitioner, proved that James Beckett died in the city of Sacramento on the tenth day of October, 1854; that Flower was then public administrator of San Francisco County; that prior to October 30th, 1854, he took charge of the estate; that on the tenth of October, 1854, Flower filed his petition for letters of administration, which stated that James Beckett, *late a resident of this State and county*, died at Sacramento, etc, leaving no will nor heirs, or relatives, resident in this State, and asking that, until the final determination of his petition, he be appointed special administrator, etc.

That on the sixteenth of October, 1854, the Court issued special letters of administration to the said Flower, under which he took charge of the estate. That on the same day the Court made an order appointing the thirtieth of October, A. D., 1854, for the hearing the application of said Flower, praying that letters of administration might issue to him, and that notice be given to all parties interested to come forward and show why petitioner's prayer should not be granted. That on the thirtieth of October, 1854, letters of administration were granted to the said Samuel Flower. It further appeared that the said Flower never took any oath as the administrator of the estate of Beckett, nor gave any bond as such, except his general oath and bond as Public Administrator when he qualified in that office in September, 1854; nor took any general letters of administration on said estate under the seal of the Court on the grant of administration to him, by the order of October thirtieth; and that he had never filed or rendered any account of said estate to the said Court, but had filed an inventory and appraisement of said estate.

The testimony further showed that the personal property of the estate was insufficient to pay the acknowledged claims against the estate. That on the thirty-first day of October, 1854, a notice was inserted in the San Francisco Herald, notifying the creditors of the estate to present their claims to the administrator within ten months, and that the same was published for four consecutive weeks in the San Francisco Herald. That within the ten months the following account was presented and allowed by the administrator and Probate Judge. That the said account was certified in conformity with the statute:

The Estate of James Beckett, deceased,

To Henry H. Byrne,  DR.

To professional services as an attorney and counsellor at law, and as attorney in fact and agent of the said James Beckett, deceased, from September, 1850, to October 10, 1854, at four thousand dollars per annum,  $16,000

Cr. by cash on account, - - - - - - 50

Balance due, - - - - - - - - $15,950

That the account of Gregory Yale had also been presented to the administrator for payment within the ten months, and that payment had been refused. That Yale had sued upon the account and recovered judgment therefor against the administrator. That the claim of Byrne and Yale's judgment had been assigned to the petitioner, who was now the owner of the same.

Counsel for widow and heir offered to prove:

1. That the estate was not indebted to G. Yale or H. H. Byrne, as alleged.

2. That the personal estate is sufficient to pay all just debts, etc.

3. That it is inexpedient to sell the real estate at the present time. •

4. That deceased was not a resident of the county of San Francisco at the time of his death.

5. That the claim of H. H. Byrne, or a part thereof, is barred by the Statute of Limitations.

The Court refused to admit the testimony.

It was then shown that Henry H. Byrne and others, creditors of the estate of Beckett, deceased, had, prior to the filing of Selover's petition, obtained an order of sale from the Probate Court of San Francisco, for the sale of the real estate of the said Beckett, and that said sale has been restrained by the injunction of the District Court of the Twelfth Judicial District, in the suit of Sarah O. Beckett against Samuel Flower and James J. Beckett, and that said injunction was not dissolved, nor had a sale of the real estate been made.

The Court granted the prayer of the petitioner, Selover, ordering the real estate to be sold, from which judgment the contestants, Sarah O. Beckett and James J. Beckett, appealed.

*Janes, Doyle, Barber & Boyd*, for Sarah O. Beckett, Appellant.

It will be observed that this is not an attempt in a collateral proceeding to question the validity of the judgment of the Probate Court, but a direct appeal from such judgment. If, therefore, the record discloses error in the proceedings, this Court will correct such error by the exercise of its appellate power, for whether the Probate Court be a Court of general or special juris-

diction, its proceedings are subject to the supervision of this Court.

It is quite consistent with possibility, that although late a resident of San Francisco, he may have been still more lately, up to and at the time of his death, a resident of Sacramento, or elsewhere. If the language used in the petition is not equivalent to an assertion of residence in San Francisco, at or immediately prior to his decease, as the appellant contends it is not, then there is nothing whatever in the petition that has the slightest tendency to show jurisdiction in the Probate Court of San Francisco.

It is a rule of pleading (enforced with great strictness so far as respects the statement of jurisdictional facts) that the words of the pleader, if ambiguous, shall be construed in that sense which is most unfavorable to the rights which he. asserts. Broom's Legal Maxims, 382, 461; Ambercrombie v. Dupuis, 1 Cranch, 343; Wood v. Stagnon, 2 Cranch, 9; Bloom v. Burdick, 1 Hill, 130.

It is from the petition that the Court, under the statute, derives its actual jurisdiction, but if such petition fail to show jurisdiction, the Court cannot take cognizance of the case. If, therefore, the Court shall be of opinion that the petition was radically defective in ómitting to state jurisdictional facts, on the existence of which the authority of the Court depended, the entire proceedings are null and void. There is not only error apparent on the record, but the whole proceedings are a mere nullity. Atkins v. Kennan, 20 Wend., 246; Elliott v. Pearsall, 1 Peters, 328; Miller v. Brinkerhoff, 4 Denio, 119.

Selover had no right to present a petition for the sale of the real estate, inasmuch as he was not a party interested in the estate. § 164, §61. "Parties interested" are the original holders of claims against the estate, they are the parties who can swear that the decedent is indebted to them, etc. § 131, Compiled Laws, p. 395. It was never intended that the administrator, or the Court, should be embarrassed by deciding on the fact or validity of any assignment made by the original creditor, after proving his debt. The Court has no jurisdiction to pass on any such question. It is the duty of the administrator to pay the original creditor. He has no concern with the claims of assignees.

No order for the sale of real estate could be made, until the administrator had returned a statement of all claims against the estate as prescribed by section 147. It does not appear that any such statement was ever made or returned by the administrator. Ford v. Walsworth, 15 Wend., 450.

The allowance of the accounts is not res judicata until a final settlement. Ingraham v. Rogers, 2 Texas, 467.

But it will be claimed that such allowance has the effect of a

judgment.   So it has, as limiting the right of the creditor to the amount so proved (Neill v. Hodge, 5 Texas, 490), or as entitling the creditor to interest.   Finlay v. Carothers, 9 Texas, 518.

The admissions of the administrator may bind him, personally, but not the estate.   Crandall v. Gallup, 12 Conn., 373; Peck. v. Boston, 7 ib., 152; Pease v. Phelps, 10 ib., 68.

*Eugene Casserly* for James J. Beckett, Appellant.

The Probate Court (below) never acquired jurisdiction of the administration of the estate of James Beckett; and consequently all the proceedings therein, including the acts of Samuel Flower, as the administrator of the estate, his allowance of claims against the estate, the petitions of creditors, etc., and the order of sale appealed from, are wholly void.

The general rule is undoubted, that all Courts of limited and inferior grade are held strictly within their powers, which cannot be enlarged by intendment.   If they derive their jurisdiction from the statute, they are bound to pursue the statute closely.   If any particular facts are necessary to give them jurisdiction, these must appear affirmatively upon the record, or their proceedings are void *ab initio*.   This is so even when these are assailed collaterally, much more when the question is raised directly; as in this case, and for the purpose of testing the validity of an order of sale by which an infant heir is to be deprived of his whole estate.

Even if the Probate Court did acquire jurisdiction, yet Samuel Flower was never duly appointed administrator of the estate, and, therefore, all his acts and proceedings, including of course his allowance of claims, and all proceedings of creditors against the estate, are illegal and void.

We venture to assert, with entire confidence, the doctrine that, before letters of administration actually issued to him, an administrator in this State has no rights, no powers over the State.

This always was the rule at the common law.

Thus he cannot commence a suit, unless on his possession as against a mere wrong doer, until letters issued.   1 Williams on Executors, 322, quoting Martin v. Fuller, Comb, 371; Comyn's Dig., "Administration B., 9;" 1 Salk., 303; Wooldridge v. Bishop, 7 B. and C., 406; Phillips v. Hartley, 3 C. and P. 121. For he has no right of action sooner.   1 Williams on Executors, 527, quoting Murray v. E. I. Company, 5 B. and A., 204; Pratt v. Swaine, 8 B. and C., 285.

In a bill in chancery by the administrator, he must allege the grant of letters.   Humphreys v. Ingledon, 1 P. Wms., 753; Goodrich v. Pendleton, 4 Johns. Ch. R., 551.

So, a release by an administrator before letters issued, does not bind him, for there was nothing in him at the time of the re-

lease.  Middleton's case 5 Coke, 28 b; Whitehall v. Squire, 1 Salk., 295, per Holt, C. J., two judges contra, though upon another ground—as see per Ellenborough, C. J., in Mountford v. Gibson, 4 East., 441.

We contend that as he stands by law in the place of a private administrator, he occupies the same position precisely. with the same powers, duties and obligations, and no others, except, perhaps, in the single instance of his right to act as administrator *ad colligendum* of the effects of a stranger dying intestate, without known heirs, which right may, perhaps, be extracted by a very liberal interpretation from sections 304, 305.

If, however, the Probate Court acquired jurisdiction fully of the estate, and Mr. Flower was lawfully the administrator, then, we say, the Probate Court erred in refusing, at the hearing, to allow the appellant, as guardian of the infant heir-at-law, to contest these claims alleged to have been allowed.

If the " allowed claims " are conclusive against the world, it does seem as if all this elaborate provision for a " full hearing " and trial before the Probate. Court, for the examination of the administrator and any other witnesses " as in other causes," " an examination of the allegations and proofs of the parties interested," by the Judge, is a very idle and superfluous form. What is there to allege, to prove, to hear, to decide?  Surely all this array of statutory provisions was not intended merely to enable the parties interested to try the question whether the personalty had been exhausted; because the statute does not seem to require this, but only that the administrator shall be satisfied of its insufficiency to pay the debts of the estate before applying for a sale of the realty?  Or the question of fraud? If not, what other question remains to be contested?  If the " allowed claims" are conclusive, it is a simple question of arithmetic whether a sale of the realty is necessary; not needing the formality of a trial in a Court of law.

Let the Court consider what sort of a proceeding is this allowance of a claim which is exalted by the respondent to the dignity of a judgment in *rem*, conclusive upon all the world.  It is completely *ex parte* between the creditor and the administrator, in the private office of either.  Nobody else knows of it, or is present at it, or if present, could offer any objection; no matter how enormous the claim, or how ruinous to the estate.

The petition of the respondent for the order of sale, does not contain the allegations necessary to give the Probate Court jurisdiction to make the order.

The respondent, Selover, is not an original creditor of the estate.   He is the assignee of the allowed claim of H. H. Byrne, and the judgment of Gregory Yale, amounting to eighteen thousand nine hundred and seventy-three dollars.

The Probate Court having once made an order for the sale of

the same real estate to pay debts, which order has never been vacated or reversed, had no jurisdiction to make a new order for the same purpose.

The Probate Court erred in refusing to admit the evidence offered by the appellant on the hearing, and also in refusing to certify to a District Court of the county of San Francisco for trial by jury certain issues of fact, on motion of appellant's counsel.

Among the evidence offered on the hearing by the appellant, and ruled out by the Court, a portion went to assail the allowed claims and the judgment of G. Yale.

*Hoge & Wilson* for Respondent.

We contend that a public administrator has duties and powers inherent in the office, and entirely independent of the action of the Probate Court, and that he is not merely a person sustaining such an official position as entitles him to apply for, and qualifies him to receive letters of administration.

By the Statute of 1851, p. 488, chapter 14, (Comp. Statutes, 422,) it is made the duty of the public administrator, whenever any stranger, or person without known heirs, dies intestate, to take charge of the estate, and to administer, and account for the same, according to the law prescribing the duties of administration, subject to the control and direction of the Probate Court. His duties are in many respects detailed.

By section three hundred and six his course is prescribed, if letters of administration are regularly granted to any other person; thus showing no contemplation of a grant in the first instance, to him, and no revocation of any letters granted to him, on the appointment of another.

So section three hundred and seven recognizes his official right to the possession of the estates of such intestates.

Section three hundred and nine expressly refers to his right to the property, in his official capacity.

By section three hundred and eleven, he must account to an administrator regularly appointed, though providing for no revocation of letters granted to the public administrator, but showing that his official powers end on letters granted to a third person.

The above act was passed after the act of March 8, 1851, on the subject of public administrators. See Stat. 1851, page 318; Comp. Laws, 848.

The latter act provides for the election of a public administrator in the county of San Francisco, who continues in office until his successor is qualified. By section three he is required, as public administrator, to perform the same duties as other administrators. This is a curious requisition, if he cannot perform any duties except by becoming another administrator.

By section four he must pay over all money, and deliver all papers, etc., to his succesor in the office of public administrator. Certainly, the successor comes in possession of the estate, and administers *virtute officii.* The act of May 1, 1851, section three hundred and eleven, provides for a transfer, by the public administrator, of all the moneys, etc., of particular estates, to the regularly appointed administrator; but the act of March 8, 1851, section four, provides for the transfer, to his successor in office, as public administrator, thus making a clear distinction between official power and mere power by a grant of administration. Any other view makes the successor take by virtue of an express grant, and not by virtue of his succession.

So the act of April 15, 1851, (see Stat. 1851, p. 206; Compiled Stat., 846,) sustains the same view, and is very like the prior statute, regulating the office in San Francisco. By this act he pays over the funds, and delivers up the estate in his hands to his successor in office. All of these acts are perfectly inconsistent with and irreconcilable to the idea of the necessity of an express grant of administration to the public administrator. If he received such a grant, he would continue to hold by virtue of the grant, though a successor were elected; for, as the successor could not act without a grant, the first appointed would hold until revocation of his letters. But the above acts require him to pay over to his successor in office, and then requires the successor to perform the same duties in regard to the estate that other administrators are required to perform.

By the Stat. 1853, p. 210, (Comp. Stat., 849,) the public administrator is required to settle his accounts with the county clerk—a requisition that would not be made if he could not act except by becoming a private administrator.

It seems clear, from these statutes, that the public administrator, as such, and officially, has the power inherent in his office, and under the direction of the Probate Court, to proceed, during his term of office, to the full and complete administration of such estates as are not otherwise administered. This is and has been the uniform practice of the Courts of this State. Public administrators, one after another, have gone out and passed over the different estates in their possession to their respective successors; orders of sale have been made, deeds have been executed, and thus the validity of a vast number of titles depends on this construction of the statute.

This is the doctrine in several other States of the Union on statutes similar to ours.

The language of the Supreme Court of Missouri, in Callahan Pub. Admr. *v.* Griswold, 9 Mo., 791, is directly applicable to our law. "We understand the general scope of the statute to comprehend every case in which letters have not been taken out under the general law of administration. At all events, no in-

convenience is likely to arise from such a construction as the creditor himself (or heir, as we say,) could, under the general law, have administered, and his impartiality or responsibility is not so well secured as that of the public administrator, who is an officer appointed by law, and has to give bonds and security for the faithful discharge of his duties."

It also appeared that Flower never took an oath as the administrator, nor executed a bond in this estate; but that he had taken the general official oath as public administrator and executed the ordinary official bond as such officer. The letters under seal of the Court were never issued to Flower on the above grant, which is entered on the records of the Probate Court.

These are the objections urged and relied upon by the appellants as vitiating the proceedings in the Probate Court. They regard the formal letters, drawn up in a formal manner by the clerk, and being, in fact, a copy of the record as more potent than the record itself.

The respondent relies on the following authorities as settling this point completely:

"It cannot be questioned but that the original book of Acts of the Court, which was the authority for the proper officer, afterwards to take out the letters of administration, was proper evidence of the title of the widow (she, in this instance, claiming to be administratrix) for the letters of administration, were only the copy of the original minutes of the Court, drawn up in a more formal manner." Lord Ellenborough, Ch. J., in Elden, Admr. v. Keddel, 8 East., 187; Davis v. Lady Elizabeth Williams, admx., etc., 13 East., 232, citing case and decision of Lord Mansfield on top of p. 127, vol. 7 of new edition of East.; 1 Saund., Pl. and Ev., 504–5; Garret v. Lester, 1 Lev., 25; Bull N. P., 246; Ramsbottom v. Buckhurst, 2 Maule & Sel., 567; Jackson v. Robinson, 4 Wend., 442; Lane, admr. v. Clarke, admr., 1 Mo. R., 468, marginal p. 657.

The English cases arose on proceedings in the Ecclesiastical Court, which is not a Court of record, and, therefore, not entitled to as much consideration as our Probate Court, which is, under our statutes, a Court of record.

As to the oath and bond, it would seem to be a work of supererogation for the public administrator to take a new oath and give a new bond. His official oath and bond are a security for all he does. His conscience is as much bound by one oath to perform his duty as by two oaths. His bond is presumed to be in a sufficient amount to cover all his official acts, and the Probate Judge may increase it at his discretion. But even if he is required to take the oath and execute a separate bond in each estate, the omission to do so would be mere error to be corrected on appeal, and not a jurisdictional defect, exposing

the proceedings to collateral impeachments. Bloom and others *v.* Burdick, 1 Hill (N. Y.) R., 130.

But it is urged that the petition of Flower did not state facts sufficient to give the Probate Court jurisdiction. The essential jurisdictional facts are : First, the death. Second, the intestacy. Third, the residence of the deceased at the time of his death or immediately previous thereto. Stat. 1851, p. 448, Comp. Stat., 377. All of these are stated. But it seems to be supposed that the residence of Beckett is not sufficiently alleged under the expression, " James Beckett, late a resident of this State and county," etc.

Webster defines " late," among other definitions, as meaning " last " or " recently in any place or office." It is a legal term, in fact, and is as such in the superlative degree and means last.

In ancient times when the addition of a man's residence was necessary in an indictment for a crime, the term " late " was always used as descriptive of his last residence, and was held a sufficient allegation of his residence in the most technical terms of the common law. Starkie's Cr. Pl., 55; Co. Inst., 669; 1 Arch. C. Pl. and Pr., 78–3, note 3 ; 1 Ch. Cr. L., 209 ; Wharton's Cr. L., 69–70.

Had the heirs of Beckett the right to go behind the allowance of the claims by the administrator and the approval of the Probate Judge, and require proof of the original indebtedness ?

The affirmative of this proposition has been relied on by the appellant's counsel with great confidence, and authorities drawn from the common law, cited in its support. It is said that these approvals are of no higher rank than judgments, and, that a judgment at common law, against an administrator, is no evidence of indebtedness against the heir. That the administrator only represents the personalty, and that such allowances, at most, only bind the personal estate. But that, when the heir is sought to be divested of the estate descended to him from his ancestor, the judgments against the administrator do not bind the realty, and do not bind the heir, because there is no privity between him and the administrator. It is, therefore, urged that the approvals, or even judgments against the administrator, are not even *prima facie* evidences of indebtedness, on applications for the sale of real estate, to pay the debts, and that the original indebtedness must be established fully by distinct evidence.

We have a peculiar statutory system on the subject of administration, complete in itself, and differing in its fundamental principles from the common law as much as two systems of administration can possibly differ. A brief examination of the points of difference may be useful in showing how incongruous the common law principles are with our system.

Beckett *v.* Selover.

At common law, an executor or administrator was responsible only for the personal assets in his hands. The heirs were liable for the realty descended for the payment of their ancestor's debts of a certain quality, viz. : bonds, covenants, and other specialties, where the ancestor expressly bound himself and his heirs. But on simple contract debts like those of Byrne and Yale, of which Selover is assignee, the heir was not bound at all, except by an express statute, making the heir liable. The creditor, however, had not the same remedy against the devisee, and, to obviate this difficulty, the Stat. of 3 Wm. and Mary, c. 14, and other statutes on that subject, were passed. There was no privity between the administrator, or executor, and the heir or devisee. The real estate in the hands of the heir or devisee, could only be reached by an action brought directly against the heir or devisee. The administrator had nothing to do with the realty—in no event could the real estate become assets in his hands for the payment of debts.

On the plea of *plene administravit*, and proof of the exhaustion of the personalty, no judgment could go against him, except that of *quando acciderint*, which only affected any future assets, coming anew to his hands. Of course, no judgment against the administrator bound the heir—there were no such things as sales under the order of a Court of Probate, Orphan's Court, or Surrogate Court, though Chancery sometimes entertained a creditor's bill and marshalled all the assets. Williams on Exr., (marginal) 1436 to 1463.

As a judgment against an administrator could not bind the heir, *a fortiori*, an admission or acknowledgment of the administrator would not bind the heir. One represented the personal estate alone, the other the real estate alone, and they had no more connection with each other than if they represented the estates of two different persons.

Our statute confers the whole personal and real property of intestates upon the administrator. His right and duty is to take "possession of all the real as well as personal estate of the deceased," and to "receive the rents and profits of the real estate until the estate be settled or until delivered over by order of the Probate Court to the heir or devisees," and to keep in good tenantable repair, all houses, buildings, and fixtures thereon, which are under his control." The personal estate is to be first applied to the payment of the debts, but if there "shall not be sufficient to pay the debts of the deceased and the expenses of administration and the allowances to the family of the deceased, the whole of the real estate may be sold for that purpose by the executor or administrator, in the manner prescribed by the statute." Stat. 1851, p. 460 to 472, chaps. 4 and 5, and particularly §§ 114 and 115.

It is very manifest from this statute that the whole real and

personal estate are thrown on the administrator, and that both constitute in his hands a fund for the payment of the debts of the deceased. Our system is taken chiefly from Texas and there the same point has been determined. Graham v. Vining et al., 2 Texas R., 439; Thompson v. Duncan, 1 Tex. R., 485.

"The approval of the account after it has been admitted by the administrator, is a judicial act—a *quasi* judgment, and so far affects the rights of the parties as to prevent any further investigation in that Court," (the Probate Court.)   *   *   *   *
"The probate law in prohibiting a suit from being brought against the administrator, unless such demand had been presented to the administrator, authenticated by the oath of the claimant, and rejected by him or disapproved by the Probate Judge, and requiring then that suits should be brought in the District Court, show that it was not intended that any controverted fact as to the indebtedness or the amount, shall be tried in the Probate Court." Niel v. Hodge, 5 Texas, 489; Sutton v. Page et al., 4 Texas, 147; Danzey v. Swinny, 7 Tex. R., 626, 628, 629, 632.

HEYDENFELDT, J., delivered the opinion of the Court—MURRAY, C. J., and TERRY, J., concurring.

1. From the framework of our various acts concerning estates and public administrators, it must be deduced that the commission of the public administrator, as a public officer, stands in the place of letters of administration, and that, consequently, it is unnecessary to issue them, in order to give him control over the property of the estates which come to his hands.

2. The question which arises upon the next error assigned, which I will consider, is whether, after the allowance of a claim, by the administrator and Probate Judge, afterwards, upon an application to sell the real estate, to pay debts, the heir can dispute the validity of the claims allowed.

It is said, against this proposition, that the allowance by the Probate Judge is a judicial act, and gives the claims the force of a judgment. This may not be denied, and yet, a judgment is of no force, except as between parties and privies. This being the general rule, *a fortiori*, it should be applied in cases like this. For after the allowance of the claim by the administrator, the allowance by the Judge is *ex parte*, for there is no one to contest.

A judgment at common law was no evidence in an action against the heir, and I apprehend that the petition to sell the real estate of an intestate is the substitute, under our system, for the action against the heir. The latter is required to be cited, and allowed to be heard, and it would be singular if he was concluded, by proceedings to which he was no party. A statute will not be construed so as to make its important provisions, to secure the rights of a party, vain and illusory.

Beckett *v.* Selover.

It is insisted that our system is different from the English, because it allows the administrator to take possession of the real estate, as well as the personal. This, however, is only that he may receive the rents and profits until the administration is concluded; the law does not make the real estate descend to him, as in the case of personalty. By the common law, the real estate is the heir's, the personal estate the administrator's, and this rule is not altered with us, except so far as regards the temporary custody of the realty; the inheritance is not affected. True, the administrator may sell it, but this can only be by suit against the heir, as I have already indicated, by the proceedings in the Probate Court, and under its decree.

It is again argued that a claim thus allowed has only judicial standing in the Probate Court because it is beyond contest, that when contested the suit must be brought in the District Court, which cannot be done until disapproved by the administrator, or Judge, and hence the result is deduced that the Probate Judge must stop with the determination that the approval is no evidence of indebtedness against the heir, and must refuse to enter an order of sale because the heir objects. The argument is faulty in supposing that no order of sale can be entered because the heir objects. It is not simply an objection to the sale which the heir institutes; it is an objection to the validity of the claim; it is upon that that he has a right to be heard, and that, of course, must be determined. It amounts simply to a re-examination of the claim, to test its validity as against the heir, and to produce or prevent a decree for the sale of the land. If the claim is not valid, then, of course, the land ought not to be sold.

Nor is the creditor deficient in any remedies which may be necessary for the establishment of his rights. If issue is joined upon the truth of his claim, he may have it tried by the Probate Judge, or certified for trial by jury to the District Court; and in either case he would have an appeal to the tribunal of last resort, and if successful in establishing the validity of his demand, the order of sale would be made, and be paid in the due course of administration.

This view also disposes of the objection, that the Statute of Limitations may produce a bar between the time of the approval of the claim and the contest with the heir. It does not lose its effect as a judgment against the administrator, and would not be barred unless time enough has run to bar a judgment.

Our conclusion is, that the Probate Court erred in refusing to allow the heir to contest these claims, and therefore the decree is reversed and the cause remanded.

Petition for rehearing having been granted, BURNETT, J., at the present Term, delivered the opinion of the Court—TERRY, J., concurring.

Beckett *v.* Selover.

This cause was argued and decided at the last October Term of this Court, and the judgment of the Probate Court of the county of San Francisco reversed. A petition for a rehearing was filed by defendant's counsel, and the rehearing ordered at this Term of the Court. The case was again argued and again submitted.

The great importance of this case, as involving the more prominent features of our probate system, and the industry of counsel in citing numerous authorities on both sides of the question, impose upon the Court a greater amount of labor than is usually necessary. While it will be impracticable to notice all the authorities cited by counsel, and all the questions raised by the record, it will be proper to examine somewhat in detail, the principal points arising in the case.

The first question is this : was Flower administrator upon this estate ?

It is insisted that he was administrator, upon two grounds :· first, as public administrator by virtue of his office, and second, by reason of the grant to him, of administration by the Probate Court.

The first ground involves the rights and powers of public administrators, and will require some examination. In considering this point, it would seem safe to assume that all the provisions relating to the powers and duties of the public administrator, and *inconsistent* with the general probate law, are *special* provisions, and must be given their full force ; leaving all the other provisions of the general probate system as much applicable to him, as to any other administrator. That he has official powers, and is an officer of the law, is plain from these special provisions. But, it is equally clear, that he has only such powers as are given him by law. The public administrator is required to give bond and take the official oath ; and it would seem to have been the intention of the statute to dispense with the bond and oath required of other administrators in each particular case.

But the question arises, whether administration must be granted to the public administrator by the Probate Court, upon each particular estate. This question is one of more difficulty ; and to ascertain the intention of the statute, it is necessary to construe all of its provisions together, so as to give force and effect to all, if possible.

By the provisions of the fifty-second section, the public administrator is entitled to the grant of administration when there are no next of kin ; and by section sixty-four, the provisions of which are general, he would be equally entitled to administration, although there were persons preferred before him, upon their failure to apply ; and putting all these provisions together, it would seem clear, that he is entitled to administration upon all estates not *otherwise administered.*

The provisions of the fourteenth chapter are somewhat ambiguous, and the meaning obscure.  By section three hundred and four, when a stranger, or person without known heirs, dies in the *house*, or on the *premises* of another person, such person shall give notice to the public administrator; and by section three hundred and five, he shall make an inventory of *such* estate, according to the law prescribing the duties of administration, subject to the control and direction of the Probate Court.  In terms, the provisions are limited to cases where a stranger dies in the house, or on the premises of another.  The intention, however, would seem to be, that the public administrator should at *once* take possession of the estate of *all* persons dying without known heirs; for the reason, that in such cases, there being no one interested to take care of the estate, there would be danger of immediate loss; and after taking such possession, he must proceed under the general law and the other provisions of that chapter.  The effect is to give him temporary possession of the property, leaving him to obtain regular administration from the Probate Court.  This view is sustained by the eighty-eighth section, which has reference to *special administration*, and by which the Court is authorized to "direct the public administrator to take charge of the estate."  The phrase, "take charge of the estate," is qualified by the scope of the section, and only means to give the public administrator the same powers over the particular estate, as he would have over the class of estates referred to in the fourteenth chapter.  And the fact, that this eighty-eighth section refers to the public administrator, in connection with a special administrator, and authorizes the Court to order him to take charge of such estate, is strong confirmatory evidence that the provisions of the fourteenth chapter refer mainly to the duties of the public administrator before the regular grant of administration to him.

The true result would then seem to be this: Under the fourteenth chapter, the public administrator is authorized at once to take possession of a certain class of estates, without any prior appointment of the Probate Court, but still subject to its direction and control; and under the provisions of the eighty-eighth section, he may be required to take charge of *other* estates in the same way; but in both cases, he holds as special administrator, and equally subject to the direction of the Court.  The appointment, under the eighty-eighth section, is without notice, and the public administrator takes possession without notice; and the reasons for one are substantially the same as for the other.  By examining the provisions of the fourteenth chapter, prescribing specially what the public administrator must do, and excluding from consideration those provisions which refer to the general act, it will be seen what a strong resemblance there is, substantially, between these special provisions and those of the ninety-

second and other sections relating to a special administrator appointed by the Court.   They both have the power to sue, to take possession and care of the assets, and, upon the granting of administration to another, they are equally required to deliver the estate to him, while neither of them can pay the debts due from the estate.

The fifty-second section provides that " administration shall be granted," in a certain order, and among the persons entitled is the public administrator; and this refers to regular administration.   Administration is then *granted* by the Probate Court to the public administrator upon the failure of the next of kin.   Is, then, the granting of this regular administration a judicial act? If so, then the Court must decide the facts and the law which entitle the public administrator to the grant of administration, as well as the facts and law in other cases.   Whether the public administrator has the right to administer upon the particular estate, must be decided by some one, and that tribunal must be the Probate Court.   That Court must decide the jurisdictional facts which must exist in all cases.

In reference, then, to the right of the public administrator to take immediate possession of any particular estate which he decides comes within the three hundred and fourth and three hundred and fifth sections, it would seem to be *in virtue* of his office; and in case he errs, and takes possession of a particular estate upon which he cannot administer regularly, then he must deliver over the assets to the regular administrator, under the three hundred and sixth section; and when *regular* administration is granted to him, and *afterwards* it shall be discovered that another person is entitled to administration, then, under the three hundred and eleventh section, the Court, at *any time*, may order the delivery of the assets to the person entitled.

The public administrator is not entitled to administer upon every estate, nor even upon the majority of estates, and there must be a judicial grant of administration to him in each particular case, and his commission, therefore, cannot prove that he is the regular administrator upon the particular estate; nor can the law intend that in each case where his authority is called in question, he shall be compelled to prove, by independent testimony, the particular facts which entitle him to administration in the particular case.   In reference to the fact of administration in each particular case, he must show a grant of administration, like any other administrator.   And it is no objection to this view, that the public administrator is required to perform some *additional* functions, after regular administration granted to him, and which other administrators are not required to do.   By the three hundred and twelfth section, he is required to render a yearly account to the county auditor; and by the second section of the act of May 18, 1853, Comp. Laws, 849, he is required to settle with

the county clerk on the first Monday of each month. The reason of these provisions is this: The State is entitled to the estates of deceased persons, dying intestate without heirs, after the payment of debts; and it is upon that class of estates which escheat to the State that the public administrator is entitled to a grant of administration from the Probate Court. And by the second section of the amendatory act of 1855, he is required, after final settlement, to pay to the county treasurer, who is required to pay into the State treasury.

The second ground upon which defendants insist Flower was administrator, namely: the grant of administration by the Probate Court, involved the solution of several very important points.

The application for letters of administration must be in writing, signed by the applicant, and must state the facts essential to give the Court jurisdiction of the case. The jurisdictional facts in this case, were the death and residence of the deceased. The words of the statute are, that "administration shall be granted, first, in the county of which the deceased was a resident at or immediately previous to his death, in whatever place his death may have happened," etc. The other cases mentioned in the second and third divisions, refer to non-residents of the State. The meaning of this provision is, that administration must be granted in the county of which the deceased was a resident at the time of his death; and the words "or immediately previous to," must be considered as mere surplusage. A man cannot reside at two places at the same time, and unless the intention was to allow two administrations to be granted, the statute must receive the construction given.

Flower in his petition described the deceased as "late a resident of San Francisco County," and it was objected that this was not sufficient, as it did not follow the words of the statute. But this objection would not seem to be fatal. There is no provision of the statute requiring the very words of the law to be used, as no precise form of petition is given. In such cases, though always safe to follow the words of the statute literally, it is not absolutely necessary, but equivalent words will answer. And from the authorities cited by defendant's counsel, the term "late" would seem to be full as strong as the words of the statute. In the connection in which it is found, the evident meaning is that the deceased was *last* a resident of San Francisco County.

In the case of Fisk et al. *v.* Norvill, 9 Texas R., 13, it was held that the words "*pendente lite*" were substantially the same as the words *pro tem.*—the words of the statute.

The next objection is that the Probate Court did not acquire jurisdiction of the parties by giving the notice required by the statute. The statute requires "notices to be posted in at least three public places in the county, one of which shall be at the

place where the Court is held." The affidavit of Lyons stated he had posted the notices in three "different places." The sixty-third section provides that "an entry in the minutes of the Court, that proof was made that notice had been given according to law, shall be conclusive evidence of the fact of such notice." The entry in the minutes was that "on due proof of posting notice of the time and place of hearing having been made," etc. This entry would not seem to be a compliance with the statute; it is not in the language of the statute, nor is it substantially the same in meaning. It is confined to "due proof of posting notice of the *time* and *place* of hearing," when the statute required the notices to state the "name of the deceased, the name of the applicant, and the term of the Court at which the application will be heard."

It is also objected that while the Probate Court made a proper order directing letters of administration to issue to Flower, the clerk never issued them, and that consequently Flower never had any right to act.

In answer to these objections, the counsel for defendant insists, among other things, that "*the allegations* in the petition gave the Court jurisdiction, and it makes no difference whether the facts be true, as alleged, or not; the fact of residence is a jurisdictional fact *in pais*, and the Court necessarily passes upon and adjudicates such facts, and its decision, right or wrong, is conclusive in a collateral proceeding."

This position is certainly broad, and stated in strong and clear language. The authorities referred to, so far as accessible, have been examined, and a portion of them would seem to support the position taken. The principal cases and those most to the point, are those of Grigan's Lessee *v.* Ashton et al., 2 How. U. S. Rep., 338, and Leonard *v.* Leonard, 14 Pick., 283.

In the case from Howard, the language of the Court, more than the facts of that particular case, would go to support the ground taken by counsel. In that case, it is substantially assumed that the *allegations* in the petition give jurisdiction, and "if the petitioner presents such a case in his petition, that on a demurrer the Court would render judgment in his favor, it is an undoubted case of jurisdiction; that any movement of a Court is necessarily the exercise of jurisdiction." In this case, the legality of a sale of land made by an administrator under an order of Court, was brought in question in a suit by the heirs against the purchaser to recover the land. The first section of the law of Michigan, passed in 1818, authorized the Supreme Judicial Court, or the County Court, to order the sale upon the application of the administrator, and without any notice to parties interested. In this vital respect, the case differs essentially from the case before this Court.

In the case of Leonard *v.* Leonard, the plaintiff had been de-

Beckett v. Selover.

clared *non compos mentis* by the Probate Court, and a guardian appointed. After the appointment of the guardian, the plaintiff transacted some business, and the validity of that transaction was called in question. The defendant offered to prove that plaintiff was of sound mind at the time of the transaction. The Court held that the Probate Court had jurisdiction—had decided that point—and that its decision could not be called in question, except by proceedings in that Court.

This case would certainly seem, at first view, a strong authority in support of the position taken. The facts that gave the Probate Court jurisdiction of the case and person, were the statements made to the Court, and the *residence* of the alleged lunatic in West Springfield. The question, whether the plaintiff was a lunatic, was, therefore, not a question of jurisdiction ; it was not proposed to show that the jurisdictional facts did not exist, but that the Court erred in its judgment, after gaining full jurisdiction of the case. But whatever may be the principle decided in that case, the current of authority of that State is against the position of the defendant's counsel.

In the case of Schneider *v.* McFarland, 2 Comstock, 459, the learned judge reviews the case of McPherson *v.* Cunlief, 11 Serg. & Rawle, 429, and Grigan's Lessee *v.* Ashton, and distinguishes them from the case before the Court, and from the case of Bloom *v.* Burdick, 1 Hill, 130. The latter case, which is a leading case in New York, and was decided by Judge Bronson, was an action of ejectment, and involved the validity of a surrogate's sale of real estate. In that case, it was held, that " though the surrogate, by presentation and account, acquired jurisdiction of the *subject-matter*, he did not aver *the persons* to be affected ; and the latter is as essential to the validity of the sale as the former," and that " no one can be condemed or divested of his rights, until he has had an opportunity in some form of being heard ; as by serving process, publishing notice, appointing a guardian, etc., and, if judgment be rendered against him before that is done, the proceeding will be utterly void." It was, also, held, that the Surrogate's Court was one of inferior jurisdiction, and a party seeking to maintain title under its proceedings, must show affirmatively that it had jurisdiction. In the case in 2 Coms., 459, the doctrine of the case of Bloom *v.* Burdick is expressly affirmed. The learned Judge says : " If, however, the adjudication in other states, to which reference has been made, conflicts with that of Bloom *v.* Burdick. which is not the case, we should, notwithstanding, adhere to that decision. Public policy demands that the safeguards which the Legislature has provided for the protection of the helpless against negligence, oppression, and fraud, should be maintained." In the case of Halyoke *v.* Haskins, 5 Pick., 20, which was a *writ of right*, wherein the demandant claimed title

to certain lands, it was held that the administrator's sale was void. Justice Wild, in delivering the opinion of the Court, said :

"The principal points made in this case were settled, and, we think, rightly settled, in the case of Cutts et al. v. Haskins, 9 Mass., 543. On the same facts now disclosed, it was decided, that the domicil of Silence and Sarah Elliott, at the time of their decease, was in the town of Natick, in the county of Middlesex ; that the power of granting administration of their estates, appertained exclusively to the Judge of Probate of that county, and consequently, that the grant of administration by the Judge of Probate for the county of Suffolk, and the subsequent proceedings thereon, were merely void ; that the proceedings and judgment of a Court not having jurisdiction of the subject-matter depending, are *coram non judice*, and void, is a position too well established to be controverted."

And this seems to be the doctrine, settled by the current of decisions in New York, Massachusetts, Maryland, Indiana, Illinois, and Mississippi. The decision in Pennsylvania, (11 Serg. & Rawle, 428, 430,) arose under a peculiar statute of 1764, and is not opposed to the view we have taken. But in the case of Messenger v. Kitner, 4 Binney, 97, the doctrine is sustained in a case where the statute required the parties to be brought in. So in Texas.

The preponderance of authority would seem to be clearly against the position of defendant's counsel. No case, it is thought, can be found, where administration was granted by a Probate Court of the wrong county, however regular may have been the proceedings, and those proceedings sustained anywhere, even when *collaterally* called in question.

The reason upon which this doctrine rests would seem to be ample. It is the object of the law, that administration should never be granted until the death of the person, and then only one administration within the State. The law is compelled to adopt some rule for determining when this grant shall be made ; and as the deceased could not have been a resident of two or more counties at the same time, the law makes his residence, at the time of his death, the test by which to determine the place where the grant should be made. These two facts must be alleged in the petition, and they must also be true in point of fact ; and when they do not both exist in point of fact, the proceedings are utterly void and not voidable ; and the decision of the Probate Court upon these jurisdictional facts, is not conclusive upon any one not actually before the Court, because the Court can compel no one to appear before it. The heirs and creditors are bound to know *when* and *where* the deceased died ; and they are presumed in law to know this, as they are the parties interested in the estate. When, therefore, the death has occurred, and the Probate Court of the proper county gives pro-

per notice, the heirs and creditors are bound to know the proceedings. But parties interested are not bound to know anything of the proceedings of a Court that has no jurisdiction, because the facts giving jurisdiction do not exist. The persons interested cannot be required to watch the proceedings of all the Probate Courts of the State, at all times. These proceedings are summary and special, and must be in strict conformity with the law. It is apprehended that no one would insist that a grant of administration before the death of a person, however regular, could be sustained anywhere; 9 Texas R., 13. "The decision of the Probate Court, that the man was dead, would certainly not be conclusive against him;" and the fact of residence is of equal importance to give the particular Court jurisdiction, and the decision of one point is no more conclusive than the decision on the other.

That our statute intended, not only that the jurisdictional facts should actually exist, but that proper notice should then be given to bring the parties before the Court, in order to give it jurisdiction, would seem to be clear from its own language, which is exceedingly simple and precise. The statute prescribes what facts the petition and notice shall contain, and the manner of giving notice, and the time; and then in the sixty-third section specifies how an entry may be made in the minutes, so as to be " *conclusive evidence of the fact of such notice.*" The sixty-second section says : " It being *first* proved that notice had been given according to law." If giving notice was not necessary to give the Court jurisdiction, then this particularity would not have been observed.

The defendant, however, insists that sufficient notice was in fact given, but conceding there was an informality in the affidavit of Lyons and the entry in the minutes, these defects were cured by his notice. It would seem competent for the Court when proper testimony was in fact given, and the proof merely defective, to receive another affidavit of Lyons, and file the same *nunc pro tunc.*

If, then, the decision upon the jurisdictional facts can be questioned in a collateral proceeding, it can the more readily be questioned in a direct suit in the same Court. In the case of Munson *v.* Newson, 9 Texas Rep., 109, the appointment of a guardian by the Chief Justice of any other county than that of the minor's residence, was held to be absolutely void; and it was also decided that the Court had jurisdiction to declare null and void its own proceedings in a case in which it had no jurisdiction in the first instance; and in the case of Miller *v.* Miller it was held, that when the proceedings of the Probate Court were void for want of jurisdiction, the limit prescribed within which it may be revised and corrected in the District Court does not apply.

The objection that no letters of administration were granted,

does not seem to be so vital as to render void the subsequent acts of Flower, conceding they were otherwise valid. It would seem that the statute intended that the public administrator should procure letters in each particular case. There is nothing in the special provisions applicable to the duties of public administrator, which renders the general provisions in reference to letters *inapplicable to him.* It would seem clear that a grant of administration must be made by the Court to him in the particular case, as well as to others, and therefore the letters would be equally required. But as the Court made a regular order that letters should issue, and as no bond or oath was required as a condition precedent, the omission to issue the letters is not fatal.

The next question is, whether the heirs of Beckett had the right to go behind the allowance of the claims by the administrator and the approval of the Probate Judge, and require proof of the original indebtedness?

The decision of this question will turn mainly upon the character of our peculiar statutory probate system, and the decisions of the State of Texas, where the same provisions exist relative to the mode of establishing claims against the estate. The common law differs so much from our system in most respects, that we can draw but few analogies from it, in illustration of this particular question.

At common law, the real estate of the intestate vested in the heir, and the personal estate in the administrator; but under our system the true theory would seem to be that both the real and personal estate of the intestate vest in the heir, subject to the lien of the administrator for the payment of debts and the expenses of administration, and with the right in the administrator of present possession. This lien he must enforce by the judgment of the Court, and he must first enforce it against the personal estate. But his right to enforce it against both is equally clear, and the law only requires the sale of the personal estate in the first place, for the same reason that it is so directed in the case of an execution issued upon a judgment. This is the case in the State of Texas by statute, which is only declaratory of the legitimate result of their probate system, (Hartley's Digest, Art. 1221,) and this would seem to be the clear result of our system.

If the title of the property of the intestate vested in the administrator it would be necessary for him, in the case of real estate, to execute conveyances to the heirs after final settlement. And it is no objection to this view, that under these probate sales, when properly conducted, the title of the purchaser comes from the *ancestor,* and not from the *heir.* The lien of the administrator is created by the act of the ancestor in creating the debt, and is paramount to the right of the heir. The heir takes by descent, the administrator gets his lien by virtue of prior con-

tract. This contingent lien every man creates when he contracts a debt, and upon his death the lien attaches to all his property. The administrator is more the representative of the creditors than of the heirs. In all suits for the benefit of the estate he represents both the creditors and the heirs; and in proceedings to sell property, he is not the sole representative of the estate, but the moving party in behalf of creditors. 2 Comstock, 462.

It is insisted by defendant that the allowance of a claim by the administrator, and its approval by the Probate Judge, has the force and effect of a judgment, and binds the heirs so that they cannot call it in question, except upon the gound of fraud.

There is no doubt but that the allowance and approval of the claim is a *quasi* judgment, binding as between the actual parties. " The approval of the account after it has been admitted by the administrator, is a judicial act, a *quasi* judgment, and so far affects the rights of the parties as to prevent any further investigation *in that Court."* Neil v. Hodge, 5 Texas Rep., 489. It is also held in that State, that the Probate Court cannot try any *controverted* fact as to the indebtedness or the amount. 7 Texas Rep., 626–9. These positions are all fully sustained by the decisions of the Supreme Court of Texas. 9 Texas Rep., 518.

But it is well settled in that State that this *quasi* judgment is not conclusive against the heir, but he may go into the District Court and institute original proceedings to set it aside. In the case of Moon v. Hellebrant, the claim was barred by the Statute of Limitations, and the heir sought to set aside the allowance pending an appeal in the District Court, from an order of sale by the Probate Court. The Supreme Court decided that as the Probate Court had no jurisdiction to review its own decisions, the District Court could not take cognizance of such a question on appeal, but that the proceedings should be commenced in the District Court. 14 Texas Rep., 312; 11 Texas Rep., 110.

The effect of this quasi judgment is to prevent any revision of its own judgments, upon the ground that controverted facts as. to the debt or its amount, cannot be inquired into in the Probate Court, but the heir is required to go to the District Court for relief. The decisions of that State in regard to the *mode* in which the heir must seek relief, are predicated upon their judicial system and the provisions of their statutes. By the Constitution of that State, the judicial power is vested in " one Supreme Court, in District Courts, and in such inferior tribunals as the Legislature may establish," and " the District Court shall have original and appellate jurisdiction and general control over the said inferior tribunals, and original jurisdiction over executors, administrators, guardians, and minors, under such regulations as may be prescribed by law." Art 4, § 15. When cases are appealed to the District Court from the Probate Courts, the trial is *de novo,*

upon the minutes. Hart's Digest, Art. 718; 9 Texas Rept., 300. There is no provision of the Constitution, or statute, it is believed, which authorizes the making up of issues in the Probate Court to be tried in the District Court.

If, then, the position of the defendant be conceded, for the sake of the argument, that this quasi judgment could not be revised by the Probate Court, even on the application of the heir, who had never been actually before the Court, what would be the legitimate result under our system ? This Court held, in the case of Smith *v.* Andrews, decided at the last October Term, that " Probate Courts are of inferior and limited jurisdiction, and in pleading their judgments it is necessary to set out the facts which gave jurisdiction." This Court has decided that the District Courts have no appellate power over the Probate Courts, and when the District Courts try issues sent from the Probate Court, the jurisdiction exercised is *original.* 4 Cal. Rep., 342. This Court has only appellate power, and cannot hear testimony. If, then, the heir wishes to contest this *quasi* judgment, when or how is he to do it ? He can appeal to this Court, but upon appeal he cannot go behind the quasi judgment, if regular on its face. It is not perceived how he can obtain any relief upon a claim once allowed, except as to errors apparent on the record, and it is apprehended that no sort of proceeding would enable him ever to reach the alleged facts *in pais,* whether " true or not," " right or wrong," if the position of the defendant's counsel be correct.

But is it true ? Has our system provided no remedy ? If not, it must be very defective. From a careful consideration of our whole Probate system, it would seem clear that the Constitution gave the District Court jurisdiction over issues from the Probate Court, without limit, on purpose to afford all parties interested a cheap and simple mode of litigating disputed questions. It would seem also true, that the general probate law intended to provide a speedy and cheap mode of settling up estates, while at the same time the rights of all parties interested are secured. The action of the administrator and the Probate Judge will practically settle the great majority of cases; but their summary and *ex parte* action will not be conclusive upon parties who have not had the means of contesting it. After he has allowed claims and proposed to sell property, it is then that the heirs are called in to see what he has done, and to contest the claims allowed, if he choose to do so. This is giving them that " *day in Court,*" without which no man can be rightfully deprived of his property. If the heirs are ever permitted to contest the claims allowed, there can be no more appropriate time and no more appropriate mode than those contemplated by the law. The language of the act is general, and does not restrict the right of the heir to any particular objection, but leaves him to make any showing that will defeat the sale, in whole or in part; and one of the best ob-

jections against the sale, is that the claims are unjust; and the very fact that the statute has made such careful provision for bringing in the heirs by personal service upon them, shows that to have been the true intention of the act.

It would seem that this view is supported by every principle of justice. It must be conceded that the negligence, favoritism, and fraud of administrators should be carefully watched. The administrator has no interest in preserving the estate for the heir; if claims are improperly allowed he suffers no loss; if he permits his private friendships or obligations to influence him, his property is not affected, and the check upon his action in allowing claims should be practical and efficient. It is true the Probate Judge must also approve the allowance, but this a very weak check, because the Judge has no means and no opportunity to know the facts of each case. If the allowance is regular on its face, the Judge seldom looks beyond, and not always *even that far*.

The books are full of cases showing the extreme negligence of administrators and Probate Judges; claims have been allowed and approved, which were barred by the Statute of Limitations, and this was apparent upon their face, and yet neither the administrator nor the Probate Judge had discovered the fact. It is peculiarly the duty of the Probate Courts to protect the rights of the helpless and innocent. The infant heirs have usually no one to speak for them—no one to watch the administrator—and when they are called into Court, they should be allowed to question the justice of the claims approved. These claims are often apparently of a very doubtful character and need examination, and it is no hardship on the creditor; he has not been put to the expense of a regular suit, and if he is required to prove his claim in a regular way, he cannot complain any more than the creditor whose claim was not allowed by the administrator in the first instance.

As to the question raised in argument, in regard to the Statute of Limitations, it is unnecessary to make any express decision, but we may remark, as a matter of opinion, that the *presentation* of the claim to the administrator is the *commencement* of a suit upon it, and is sufficient under our statute to stop the running of the statute. The true ground upon which the heirs can question the allowance and approval of the administrator and Judge, is that they are by our system only brought into the case at a certain stage of it upon petition and notice. The previous acts of the administrator and Probate Judge must occur before the heirs can contest the claims, and on proceedings in the same case as much as the subsequent proceedings.

It is unnecessary to decide the other questions raised by the record. We think the Probate Court erred in refusing to hear testimony to prove that the deceased was not a resident of the

county of San Francisco, and also in not permitting the heirs to question the justice of the claims allowed.

We, therefore, cannot disturb the former decision of this Court.