## HAYNES v. MEEKS.

The fair inference to be drawn from section one hundred of the "Act to Regulate the Settlement of the Estates of Deceased Persons," is, that the permission given an executor or administrator to resign in the one case specified, is a negative on such right in all others. *July Term*, 1857.

The Probate Judge is charged by law with the execution of special duties; he is not vested with plenary powers, but acts within an inferior and limited jurisdiction. *Ib.*

The Probate Court has no power to accept the resignation of an administrator until he has first settled his accounts with the estate. *Ib.*

Where an administrator filed in the Probate Court his resignation, and on the same day the Court made an order reciting that the administrator had filed his resignation, and requiring him to turn over to the public administrator all the effects of the estate, and that he settle with the public administrator by the first day of the next term, and when such settlement should be fully made, the administrator and his sureties be released, and where no final settlement was made : *Held*, that such act was an acceptance, on the part of the Court, of such resignation. *January Term*, 1858.

The Court had no right-to accept the resignation of the administrator until he had settled his account with the estate, *Ib.*

But having exercised the right so to do, the error of the Court was merely voidable, and can not be taken advantage of collaterally. *Ib.*

The facts of the death of the intestate, and of his residence within the county, are foundation facts, upon which all the subsequent proceedings of the Court must rest. Unless these facts exist, the Court can not make a single binding order in reference either to the subject-matter or the person. *Ib.*

But when these facts do exist, every subsequent movement of the Court, is the exercise of jurisdiction over the subject-matter, and over all persons who have been brought properly before it. *Ib.*

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

This was an action of ejectment brought by the plaintiff against the defendant, to recover the possession of a tract of land.

The facts necessary to explain the decision, are substantially these :

George Harlan resided and died in Santa Clara county, in July, 1850, seized of the premises in controversy; and administration was duly granted to Henry C. Smith by the Probate Court of that county, in August, 1850.

On the 29th of November, 1853, Smith was cited to appear and show cause why an attachment should not issue against him, for failing to file his account for final settlement.

On the 31st of December, 1853, Smith filed a paper, which is in these words: "Henry Smith, administrator of the estate of George Harlan, deceased, hereby resigns his appointment as such administrator, and asks that this, his resignation, be received, and he be discharged therefrom."

On the same day, the Court made an order reciting that Smith had filed his resignation; that, therefore, he turn over to the public administrator all the effects of said estate for purposes of general administration; that he settle with the public adminis-

trator by the first day of the next term; and, that when such settlement should be fully made, Smith and his sureties be released from any further liability.

From the 24th of January, 1854, up to the 23d of May, 1854, various orders were made by the Court, in reference to the report and final account of Smith, showing a large balance in his hands unaccounted for.

On the 18th of May, 1855, Benjamin Aspinwall filed a petition praying the appointment of himself as administrator, stating that he was a creditor, and that Smith and his sureties were insolvent.

The Court appointed Aspinwall administrator *de bonis non* of the estate on June 15th, 1855.

Such proceedings were afterwards had, that the premises in controversy were sold by order of the Court, and the plaintiff became the purchaser.

The defendant claims, and has possession of the property, under conveyances from the heirs of Harlan.

This suit was brought to recover possession of the property. The defendant had judgment in the Court below, and the plaintiff appealed.

This case was first decided at the July Term, 1857, and at the January Term, 1858, the second opinion was delivered on re-argument. After the second opinion was rendered, a petition for a re-argument was again filed, and at the present term the petition was disposed of by the Court without any change in its former opinions.

*Crockett & Page* for Appellant.

On the first point, the argument of the respondent's counsel is: *first*, that in point of fact and law, Smith's resignation as administrator, was not accepted by the Court; *second*, that he never settled his accounts, and without such settlement, the Court, under our statute, had no power to accept his resignation.

That his resignation was, in point of fact, accepted by the Court, would appear too plain to admit of a doubt. The fact that he is ordered immediately to turn over to the public administrator all the papers and effects belonging to the estate, for the purpose of general administration, and is required to settle his whole account with the public administrator without delay, would seem to place the question beyond dispute.

The case of Beckett *v.* Selover, 7 California Reports, 215, is cited in support of this position; but it does not sustain it, for two reasons: *first*, because in that case, it is decided that the acts of the public administrator would not be void; and, *second*, because, in this case, the order of December 31st was, in substance, an order granting letters to the public administrator. But if the order was void, it would be wholly immaterial, inas-

much as it is only cited as proof that the resignation was accepted; and, as evidence of the intention of the Court, it is equally sufficient, whether it was in fact a valid order or not.

The statute provides (Acts of 1851, pp. 459, § 100) that an executor or administrator may at any time resign by writing filed in the Probate Court, " provided he shall first settle his accounts and deliver up all the estate, to such person as shall be appointed by the Court." It is manifest that the right to resign was intended as a benefit to the administrator, which he might exercise at any time with the consent of the Court; but to which he was not entitled as a matter of right, until he had first settled his accounts and delivered over the estate to his successor. The spirit of the act obviously contemplates that the Court may permit him to resign, without such settlement; but may refuse its assent, and compel him to proceed with the administration, if it sees fit, until his accounts are settled.

But respondent's counsel insist that the case of Flinn v. Chase, 4 Denio, 85, is an authority directly in point, in support of their position. In that case, the administrator signed a paper renouncing the administration, for the reason that he was about to remove from that neighborhood; and having returned his letters to the surrogate, that officer accepted them, discharged the administrator from his trust, and appointed his successor. " But this," says the Court, " a surrogate has no power to do, except in special cases provided for by law, of which this was not one."

It is very evident the Probate Court considered Smith as out of office. They manifestly interpreted their own acts as amounting not only to an acceptance of the resignation, but as a virtual and practical removal. This is proved not only by the order of December 31, but by their stringent dealings with him, and especially by appointing Aspinwall as his successor, Smith and his sureties being all insolvent, and no settlement of his accounts having been made.

" A removal from office may be implied from the appointment of another person." Bowerbank v. Morris, Wallace C. C. R., 118.

" Where an administrator has left the State, and the Ordinary grants letters to another, this is of itself a sufficient judgment of revocation of the authority of first." McLaurin v. Thompson, Dudley's S. C. R., 335.

On this branch of the case, therefore, we maintain the following proposition, to wit:

1. That Smith's resignation was valid without a settlement of his accounts, if the Court accepted it.

2. That the Court did accept it, and his authority ceased eo instanti.

3. That by revoking its acceptance, the Court had not the power to reinstate him, by this method.

4. That the Court did not, in fact, revoke its acceptance, but only retained his accounts for settlement.

5. That the grant of letters to Aspinwall, of itself, operated as a revocation of the former letters.

6. That the Court, in granting the new letters, passed upon the sufficiency of the notice for the application, and its decision can not be questioned collaterally.

*A. P. Crittenden* for Respondent.

The plaintiff (appellant) claims title to the land in controversy under a sale made by Benjamin Aspinwall, as the administrator of the estate of Harlan, under an order of sale made by the Probate Court of Santa Clara county.

For the defendant (respondent) it is insisted:

1. That Aspinwall was never administrator of the estate of Harlan.

2. That the proceedings of the Probate Court under which the sale was made, were irregular and void for want of jurisdiction, and no interest in the land passed to the plaintiff by the sale.

Section one hundred is the only provision of our statute upon the subject, and it makes the previous settlement of the administrator's accounts and surrender of property, conditions which must be fulfilled before he can resign, and without their fulfillment the Court has no power to accept his resignation. The statement is clear and explicit. The administrator must first settle his accounts and deliver up the estate; in other words, he can not resign until after he has performed these acts. Smith performed neither of them. His accounts were not settled for months after his resignation was offered, (it is objected by the appellant's counsel that they never were settled,) and the order requiring him to turn over the estate to the public administrator was revoked before anything was done under it.

The Probate Court being a Court of limited jurisdiction, can exercise no powers except such as are expressly conferred upon it, and in exercising any power which is conferred, must do so in the mode pointed out by the statute. Without an express authority it can not, in any case, nor under any circumstances, accept the resignation of an administrator, any more than it can appoint one in a case in which the power of appointment is not given to it. It has no "plenary powers" as contended for, in virtue of which it can act. The statute is the only source of its power. If this be so, the position taken by the appellant's counsel, that an administrator has the privilege of resigning, as a matter of right, upon his first settling his accounts and turning over the estate, but that he might nevertheless resign at any time, without the consent of the Court, without first performing these acts, is manifestly untenable. The statute does not in any way whatever provide for nor permit a resignation without com-

8

plying with these conditions; when these conditions are complied with, then only, and as a matter of right, the administrator may resign.

The case of Flinn v. Chase, 4 Denio R., 85, is directly in point.

This decision fully sustains the proposition, that a Probate or Surrogate Court can not accept the resignation of an administrator, unless the authority to do so is expressly given by statute.

The action of the Probate Court upon the proffered resignation of Smith, must be considered in connection with the law under which it was taken. The order of the 31st of December, 1853, was manifestly made with a view to the statute on the subject of resignations. It does not accept the resignation, but merely orders those things to be done which the statute makes pre-requisites of an acceptance. It is as clearly conditional as the statute itself. In the most explicit manner it requires, as a condition precedent to its taking effect, the settlement of the accounts and the delivery of the property. Neither of these things having been done, the order never took effect, and Smith was not discharged from the administration, nor was it transferred to the public administrator.

Moreover, this order was void. It required Smith to settle his accounts with the public administrator. Such a settlement would have been a nullity. It must be before the Court, and when made with a view to the discharge of the administrator, must be upon notice. §§ 233–237. It was also void so far as it sought to place the estate in the hands of the public administrator for purposes of general administration. This could only be effected by letters regularly issued upon petition and notice. Beckett et al. v. Selover, 7 Cal., 215.

Two authorities are cited in support of this power of removal by implication. The case of Bowerbank v. Morris, Wallace C. C. R., 118, was a decision made in 1801, in the Circuit Court of the United States, for the Eastern District of Pennsylvania, upon the right to the office of marshal, an office held at the pleasure of the President. The Court decided that the former marshal was impliedly removed by the appointment of a successor, and that the removal took effect upon notice of the appointment being given to him.

The office of marshal is of a different class from that of administrator, and held by a different tenure. If an administrator held at the pleasure of the Probate Judge, and was removable at will, and without any cause assigned, there might be some analogy between the cases.

Dudley's S. C. Reports, from which the case of McLaurin v. Thompson is cited, contains decisions made in the State of Georgia, between the years 1821 and 1833, during which period, and down to the year 1849, there was no Supreme Court or Court of Appeals, the only appeal being from a common to a special jury.

There was, however, a kind of informal Court, composed of all the Judges, assembled occasionally for consultation and for the trial of special cases, and it is this Court whose opinions are to be found in this volume. They are said to be regarded as of no authority in the State of Georgia. If the book could be obtained, and the case referred to examined, it would no doubt be found that, if there was any soundness in the opinion, it rested on the peculiar provisions of a statute very unlike our own.

*Shattuck, Spencer and Reichert*, for Appellant, on petition for re-argument.

It is respectfully submitted—

1. That the order appointing an administrator of the estate of an intestate is a judicial decree, fully within the jurisdiction of a Probate Court, and the letters of administration thus issued, are conclusive against all the world until revoked or reversed on appeal.

To sustain this proposition, the following authorities are submitted, with confidence that they will be found fully to sustain it, to wit: 1 Lord Raymond, 262, and authorities there cited; 1 Levinz, 235, 236; 2 Phillipps Ev., 29.

" Thus a probate is the only legitimate evidence of personal property being vested in an executor, or of the appointment of an executor. On these questions it is conclusive against all persons; the original will is not admissible for that purpose, so letters of administration are conclusive that the person therein appointed is such."

" Though a person has not been party to a suit respecting the granting of a probate, he is not admitted to prove that another person was appointed executor, or that the testator was insane, or that the will was forged."

So strongly have Courts sustained this doctrine, that in Massachusetts it has been decided that letters of administration were conclusive evidence of the death of the intestate. Newman *v.* Jenkins, 10 Pick. R., 515.

So, a grant of administration to decedent's husband was held as conclusive evidence that she had power to make a will, though a *feme covert*. Cassels *v.* Vernon, 5 Mason, pp. 332, 334, 335. See, also, Picquet *v.* Swan, 4 Mason, pp. 443, 461; 2 Cowen & Hill's Notes, 60, note 40. So, the recital in letters of administration with the will annexed, that Roth was executor in conclusion of that fact. Roth *v.* Enniskillen, 1 Huds. & Bro., 187.

So conclusively do letters clothe the administrator with power to act, that his official acts are held valid in the interim, although his appointment is reversed on appeal, or revoked by the Probate Court as void ; and purchasers at his sales are protected. Bradford *v.* Bandinot, 3 Wash. C. C. R., 122; Benson *v.* Rice, 2 Nott & McCord, 577, 578, and authorities there cited.

On this point, (of the validity of sales,) the particular attention of the Court, in addition to the cases above cited, is called to two cases in Mississippi, one of Wright v. Beck, 10 S. & M. R., 277; the other, Rayland v. Green, 14 S. & M. R., 194.

At the July Term, 1857, MURRAY, C. J., delivered the opinion of the Court—TERRY, C. J., concurring.

The only question involved in this case is, whether an administrator can resign, by permission of the Probate Court, without having previously settled up his accounts.

Section one hundred of the Act regulating the Settlement of the Estates of Deceased Persons, provides " that an executor or administrator may, at any time, by writing filed in the Probate Court, resign his appointment; *provided,* he shall first settle his accounts, and deliver up all the estate to such person as may be appointed by the Court." This is all the authority to be found in our statute upon the subject.

The question is somewhat novel, and the counsel have been able to find but one decision which has any bearing on the subject. The case of Flinn v. Chase, (4 Denio, 85,) seems to be precisely in point. The Court held that a surrogate has no right to permit or authorize an administrator to resign, except in the cases provided by law. On examination of the New York statutes, I have been unable to find the cases referred to by the Court, in which it is said a resignation will be permitted, and the force of the decision is somewhat weakened by the evident misapprehension or mistake of the statute by the Court.

It is insisted that section one hundred of our statute, confers upon an administrator an absolute right of resignation in a certain case, as contradistinguished from a partial or qualified right which he may exercise by permission of the Judge.

The fair inference to be drawn from the statute, following the ordinary rules of construction, is that the permission given in the one case is a negative upon the right in all others. The Probate Judge or surrogate is charged by law with the execution of special duties; he is not vested with plenary powers, but acts within an inferior and limited jurisdiction. There is nothing in the statute conferring upon him the power to accept the resignation of an administrator, except in a single case, and it is not unreasonable to suppose that the Legislature intended to cast upon those who voluntarily took upon themselves the administration of an estate, the burden of settling the same, except in the single case mentioned.

The appellant contends, that inasmuch as the law authorizes an administrator to be removed for certain specific causes, the Judge should be allowed to accept his resignation, where it appears that these causes of removal exist, and that the Court should not be compelled to go through the form of a removal,

where the party is willing to resign. Where a citation to show cause why he should not be removed for some misfeasance or malfeasance, had issued, and the officer confessed the charge by attempting to resign, the Court would not necessarily be required to go through with all the proof, but might enter an order of removal. Be that as it may, this case presents no such state of facts. There never was an attempt to remove the administrator, and the acceptance of his resignation, under the circumstances, was illegal and void.

Judgment affirmed.

At the January Term, 1858, on re-argument, BURNETT, J., after stating the facts, delivered the opinion of the Court— TERRY, C. J., concurring.

The first question presented by the record is, whether the resignation of Smith was accepted by the Probate Court. There is no order stating expressly that the resignation was accepted.

In 1 Williams on Executors, 147, it is said: "Some authorities maintain that, if the Ordinary commit administration to the wrong party, and then commit it to the right, the second grant is a repeal of the first, without any sentence of revocation; but in other cases it has been held, that the first is not avoided, except by judicial sentence;" "and in all cases where the first administration is repealed, the second stands good, though granted after the first, and before the repeal of it."

In the case of Bowerbank *v.* Morris, (Wallace's C. C. R., 123,) it was held, by the Circuit Court of the United States for the Third Circuit, that "a removal from office may be either express, that is, by a notification of the President of the United States that an officer is removed; or implied, by the appointment of another person to the same office." So, in the case of McLaurin *v.* Thompson, (Dudley's Rep., 336,) it was decided, by the Court of Georgia, that the second grant of administration is equivalent to a judgment of revocation.

We think there can be no doubt as to the fact that the resignation of Smith was accepted by the Probate Court. The subsequent appointment of Aspinwall was evidence of this, taken in connection with the order made on the thirty-first of December, 1853. Although these are Courts of limited and special jurisdiction, still no great strictness should be required as to the *manner* of stating facts in their records. So the facts are stated, it is sufficient, although not stated in the most direct and certain form.

The second question is, whether the Court had the right to accept the resignation of Smith before he had settled his accounts.

In reference to this point, we adhere to our former opinion. We see no reason for changing the views we then expressed.

But the third question, and the main point in the case, is, whether this error of the Court was void or merely voidable.

In the case of Beckett v. Selover, (7 Cal. Rep., 215,) we held that there were two jurisdictional facts that must exist, to support administration, in every case: *first*, the death of the party; *second*, his residence within the county at the time of his death. " These two facts must be alleged in the petition, and they must be true in point of fact."

The decision of an inferior Court, upon the question of its own jurisdiction, can not be conclusive upon any one not before it, and then only in reference to jurisdiction of the person, which may always be waived. But when the Court has once acquired jurisdiction, "every movement of the Court is necessarily the exercise of jurisdiction." If the jurisdiction acquired be of the subject-matter, then all the subsequent proceedings in reference to the subject-matter must be nothing but the exercise of jurisdiction over that subject-matter; so, if the Court once acquire jurisdiction of the person, any other movement affecting the person must be the exercise of jurisdiction as to that person; and when jurisdiction is once acquired of both the subject-matter and the person, then any subsequent movement of the Court must be the exercise of jurisdiction as to both.

In this case, the Probate Court had jurisdiction of the subject-matter and of the person. Administration had been regularly and properly granted to Smith, and he was under the control of the Court, which had power to receive his resignation, suspend his powers, or revoke his letters. (Sections 281, 286.) The Court having jurisdiction to receive the resignation of Smith, the acceptance of his resignation must be nothing more than the exercise of this jurisdiction. Had the Court possessed no power over Smith at all, and, consequently, no right to receive his resignation under any circumstances, then the act of the Court would have been void. But the Court, having jurisdiction of the subject-matter of the estate and of the person of Smith, must judge whether the circumstances of his case were such as to entitle him to the privilege of resignation; and if the Court erred in this judgment, it was a mere error committed in the exercise of jurisdiction.

The fact of the death of the intestate, and of his residence within the county, are foundation facts upon which all the subsequent proceedings of the Court must rest. Unless these facts exist, the Court can not make a single binding order in reference to the subject-matter, or the person. But when those facts exist, every subsequent movement of the Court is the exercise of jurisdiction over the subject-matter, and over all persons who have been brought properly before it. When parties interested, as, for example, the heirs in reference to a sale of real estate, have not been brought before the Court, they may, in proper cases

and by the proper proceedings, set aside such action of the Court.

But in this case, Smith was properly before the Court, and the right of the Court to receive his resignation, under proper circumstances, was clear; and the acceptance of his resignation was only the erroneous exercise of jurisdiction. The Court has power to remove an administrator for certain specified causes. Should the Court remove him without sufficient cause, and he take no appeal, could third parties object to this action of the Court in a collateral proceeding? So, if the Court suspend an administrator without sufficient cause, and appoint a special administrator during the period of his suspension, could this action of the Court be called in question collaterally? or would the act of the special administrator be void? We apprehend not.

The case of Griffith *v.* Frazier, (8 Cranch, 8,) was where an executor had qualified but afterwards removed from the State, and letters of administration were granted by the Ordinary to another person. This grant was held void, because, "the appointment of an executor vests the whole personal estate in the person so appointed; he holds as trustee for the purposes of the will, but he holds the legal title in all the chattels of the testator; he is, for the purpose of administering them, as much the legal proprietor of those chattels as was the testator himself while alive. This is incompatible with any power in the Ordinary to transfer these chattels to any other person by the grant of administration on them. His grant can pass nothing; it conveys no right; it is a void act." (Marshall, C. J.)

We have also been referred, by the learned counsel of defendant, to the case of Flinn *v.* Chase, (4 Denio, 85.)

It must be conceded that this decision is an authority in point. But it does not seem to have been well considered, or rightly decided. The surrogate had improperly appointed Lowry instead of Dugan, the brother of the deceased; and had afterwards accepted of Lowry's resignation without sufficient reason. The Court held the appointment of Lowry a mere irregularity, but the acceptance of his resignation a nullity. Now it was clear that the surrogate had jurisdiction to grant letters, and also to accept the resignation of the administrator; and why his appointment without cause should be merely irregular, and the acceptance of his resignation void, it is difficult to perceive. The surrogate had equal jurisdiction in both cases, and his act in both would seem to have been only an erroneous exercise of jurisdiction.

We think the decision of the Court below, as to the sufficiency of the notice of the application to sell the real estate, was correct, and that the sale was not void for want of notice.

It is unnecessary to decide the question, as to whether the want of sufficient notice of an application to sell real estate can

be set up as a defence in an action to recover the possession of the property.   We may remark, however, as a matter of opinion, that a direct proceeding to set aside the sale would be preferable. Under our probate system, " the true theory is, that both the real and personal estate of the intestate vest in the heir, subject to the lien of the administrator for the payment of debts and the expenses of administration, and with the right, in the administrator, of present possession." (Beckett v. Selover, 7 Cal. R., 215.)

If the sale be void, or voidable, the lien of the administrator continues ; and it would seem equitable that the purchaser, who has paid the debts of the estate, should have a lien upon the estate for his purchase-money.   All the equities of all parties could be better settled in a direct proceeding.   (Regland v. Green et al., 14 Smedes & M., 195.)   Besides, it may be matter of grave doubt whether a sale of real estate without sufficient notice would be void, or merely voidable.   The sale being a proceeding *in rem*, there may not be any sufficient reason for holding the sale void by reason of a defective notice.   (4 Phil. Ev., p. 62, note 42.)

For the reasons stated, the judgment of the District Court is reversed, and that Court will render judgment for plaintiff upon facts found.