ESTATE OF EDWARD BARRETT, DECEASED.

[No. 21,229; October, 1899.]

Administration—Whether Relatives Entitled to.—The relatives of a decedent are entitled to administer only when they are entitled to succeed to the personal estate or some part thereof.

Administrator—Right to Nominate.—In the case of a surviving husband or wife the right to nominate an administrator under section 1365 of the Code of Civil Procedure is absolute, while in the case of other persons contemplated by section 1379 the right is at most a mere power to address a recommendation to the discretion of the court.

Administrator—Relation Toward Heirs and Estate.—An administrator sustains to the estate, the heirs and other persons interested the relation of trustee. He takes neither an estate, title nor interest in the lands of the intestate, but a mere naked power to sell for specific purposes.

Administrator—Death of Nominor.—If the daughter of a deceased person gives a third person authority to apply for letters of administration in her behalf, the power so granted ceases and determines at her death.

Descent—Vesting of Estate in Heir.—Immediately upon the death of an ancestor his estate, both real and personal, vests at once by the single operation of law in the heir.

Descent—Law Purely Statutory.—The descent of estates of deceased persons is purely a matter of statutory regulations.

Descent—Husband as Heir of Wife.—If a widower dies intestate leaving collateral relations and one child, a daughter, and she, before the estate is administered, dies intestate without issue, leaving neither father, mother, brother nor sister, the estate vests in her surviving husband as her heir under subdivision 5 of section 1386 of the Civil Code.

Administration — Husband as Relative of Wife.—A husband is of "kin" to his wife and her "relative," so as to be entitled to administer on her estate under section 1365 of the Code of Civil Procedure.

Administration of Wife's Estate by Husband.—If a widower dies intestate leaving collateral relatives and one child, a daughter, and she, before the estate is administered, dies intestate, without issue, her surviving husband is entitled to administer her estate as against the collateral relatives of her father.

Administration Follows Property.—The right to administer follows the property.

Administration — Statutory Kinship.— The law of administration contemplates a legal or statutory kinship as well as a kinship by blood.

Administrator—Competency Determined of What Time.—It is the status of the petitioner at the time of the grant of administration that determines his competency.

The Public Administrator must Always Give Way to the relatives who are entitled to succession, provided they are qualified to assume the functions of administration.

Application for letters of administration.

Charles A. Lee, Lee & Coghlan, for John Duffy, surviving husband of daughter of decedent.

A. Ruef , for Public Administrator Drinkhouse.

Hugo D. Newhouse, James P. Sweeney, for others.

COFFEY, J. The facts before the court are few and uncontroverted. Edward Barrett, father-in-law of John Duffy, petitioner herein, died, a widower and intestate, on the second day of February, 1899. He left surviving him as his sole heir at law a daughter, Margaret Louisa Duffy, otherwise known as Louisa Duffy, wife of the petitioner John Duffy.

Thereafter, to wit, on the 30th day of March, 1899, the said Margaret Louisa Duffy departed this life intestate and without issue. Margaret Louisa Duffy, at her decease, had living neither father, nor mother, nor brothers, nor sisters. But she left a surviving husband, John Duffy, the petitioner herein.

Margaret Louisa Duffy died before any administration had been had upon the estate of her dead father, Edward Barrett.

Theresa Hartnett, who also petitions the court to be granted letters of administration, is a niece of the late Edward Barrett. She alleges that the heirs at law of the said Edward Barrett are the said Theresa Hartnett, Lizzie Hartnett, also a niece of the said Edward Barrett, deceased, and a sister of the said Edward Barrett, whose residence is in Ireland, and certain cousins and collateral relatives of the said Edward Barrett, deceased.

John Daly, also a petitioner herein, stands upon an alleged authority, alleged to have been given him by Margaret Louisa Duffy, deceased, in her lifetime. Under this pretended authority no legal steps were taken by Daly beyond the mere

filing of a petition. No hearing of the petition was ever had and no letters of administration were ever granted.

The public administrator also applied for letters.

The statutory rules of descent in California provide and establish how the title to estates shall pass by descent as well as by devise and deed. The statute assumes to furnish and does furnish in every possible case in precise terms the rule by which alone title to the estate of a deceased intestate can be acquired in this state. In the determination of such questions the court will look alone to the statutes of distribution and must exclude any and all persons not within its provisions.

The petitioner, Theresa Hartnett, niece of Edward Barrett, deceased, does not, upon the statement of facts, come within any provision of the statute, and her claims either to any share in the property or to the right of administration are effectually disposed of by the terms of the statute: Civil Code, sec. 1386, subds. 1, 5; Code Civ. Proc., sec. 1365.

The sections cited also exclude from participation in the estate all the persons mentioned in the petition of Theresa Hartnett.

The Civil Code, under the title "Succession," provides in section 1386 as follows: "When any person having title to any estate not otherwise limited by marriage contract dies without disposing of the estate by will, it is succeeded to and must be distributed, unless otherwise expressly provided for for in this Code and the Code of Civil Procedure, subject to the payment of his debts in the following manner: . . . If the decedent leave no surviving husband or wife, but leave issue, the whole estate goes to such issue."

Edward Barrett was a widower. He left as his sole issue, one daughter, Margaret Louisa Duffy, the lawful wife of the petitioner, John Duffy.

It follows that immediately upon the death of Edward Barrett his entire estate both real and personal vested at once in his sole heir at law Margaret Louisa Duffy.

It can make no sort of difference that the estate had not been administered at the time of the decease of Mrs. Duffy.

Administration is but the machinery of the law for transferring the possession of estates after all the debts of the intestate have been paid.

Mrs. Duffy, therefore, died seised in contemplation of law of an estate of inheritance. She could, in her lifetime, have made valid testamentary disposition of the estate, and having neglected to do so, the statute takes hold of the estate and by its own force passes all of her interests in it to her heir at law.

Theresa Hartnett never was and is not now an heir at law or any heir to any part of the estate of Edward Barrett, deceased.

Neither is she entitled to administer. The right to administer upon the estate of a deceased person arises alone from the statute.

Section 1365 of the Code of Civil Procedure prescribes the order in which administration upon the estate of deceased persons must be granted. The relatives of the deceased are entitled to administer only when they are entitled to succeed to the personal estate or some part thereof. That is the statutory and the only test, and, applying this test to the case of Theresa Hartnett, it is obvious that she is excluded. If it be claimed that not being an heir she is nevertheless entitled to administer as "next of kin," the answer in the negative is found in subdivision 7 of the section, which employs the following language: "The next of kin entitled to share in the distribution."

By no possible theory can Theresa Hartnett share in the distribution of the estate. She was not an heir to Mrs. Margaret Louisa Duffy. Though related by blood to Edward Barrett she must be viewed, in the light of the statute of distribution, in the position of a stranger. She has no other standing: Estate of Ingram, 78 Cal. 586, 12 Am. St. Rep. 80, 21 Pac. 435; Estate of Carmody, 88 Cal. 616, 26 Pac. 373.

The reasoning by which Theresa Hartnett is excluded alike from the succession and the administration applies with equal exclusionary force to the sister of Barrett residing in Ireland and to all the collateral relatives named in the Hartnett petition.

The petitioner, John Daly, under the pretended authority given by the late Mrs. Duffy, has no standing in court.

The right of Mrs. Duffy, in her lifetime, to nominate a person to act as administrator upon the estate of her deceased father, if it existed at all, must have proceeded from the statute; the right could not have been derived from section 1365 of the Code of Civil Procedure, for that section restricts the right of nomination to the surviving husband or wife. And Mrs. Duffy being a daughter was obviously not authorized to nominate.

The authority for a valid nomination by Mrs. Duffy must therefore be found, if at all, in section 1379 of the Code of Civil Procedure, which is as follows:

"Administration may be granted to one or more competent persons, although not otherwise entitled to the same, at the written request of the person entitled filed in court.

It will be observed that the language "administration may be granted" is permissive and reposes a discretion in the court.

In Re Carr's Estate, 25 Cal. 585, section 66 of the Practice Act, which has been re-enacted into section 1379 of the code, was held to apply only to cases where a vacancy exists in the administration.

In Re Healy's Estate, 122 Cal. 162, 54 Pac. 736, it is held that the section reposes a discretion in the court and that the court may appoint in the exercise of its discretion the person next entitled. But the right of nomination is one that may be withdrawn by the nominor.

In Re Shiel's Estate, 120 Cal. 347, 52 Pac. 808. In that case the court said: "The right to have letters issued to the nominee was the right of the widow and not the right of the nominee."

Bearing in mind the distinction, that in the case of a surviving husband or wife the right to nominate under section 1365 is absolute, while in the case of those persons contemplated by section 1379, the right is at most a mere power to address a recommendation to the discretion of the court, can it be said that the nomination of Mrs. Duffy addressed to the mere discretion of the court, conferred an indefeasible right upon the nominee? If it was in the discretion of the court

to reject her nomination upon the hearing, can it be said that now, no hearing having been had, any absolute right has passed to Daly, the nominee?

Again, if the absolute right of a surviving husband or wife confers no privilege which may not at the wish of the nominor be withdrawn at any time before the issuance of letter of administration, can it be said in reason that a mere right such as Mrs. Duffy had under section 1379, to address a recommendation to the discretion of the court, clothed the nominee with a right that cannot be disturbed?

It should be borne in mind that Daly, if he was authorized to do anything, was empowered to apply for letters of administration in the place of Mrs. Duffy to perform an act for her—and that, before any hearing of the application, Mrs. Duffy died and her estate became vested in her surviving husband.

An administrator sustains to the estate, the heirs and other persons interested, the relation of trustee. He takes neither an estate, title nor interest in the lands of his intestate, but a mere naked power to sell for specific purposes: Warvelle on Vendors, 88; Ryan v. Duncan, 88 Ill. 144.

In Bergin v. Haight, 99 Cal. 52, 33 Pac. 760, it is said: "An administrator acts as trustee and agent for the owners of the property, whether heirs or assignees."

A right to apply for letters of administration cannot be of greater dignity than a right to administer after letters granted. Daly received from Mrs. Duffy a mere power to apply for letters of administration in her behalf and the power, like other powers not coupled with an interest in the thing granted, ceased and determined with the life of the grantor.

Daly seeks to act for a person not in being, and in the nature of things, the right of the nominor having ceased he has no standing to sustain his application. The power granted by Mrs. Duffy died with her.

The petitioner, John Duffy, is vested by operation of law with the legal title to all the property, both real and personal, now in controversy in this proceeding. It is the rule in this state that immediately upon the death of an ancestor his

estate, both real and personal, vests at once by the single operation of law in the heir: Civ. Code, sec. 1384.

In the case of Beckett v. Selover, 7 Cal. 215, 68 Am. Dec. 237, the court said: ''The true theory is that both the real and personal property of the intestate vest in the heir, subject to the lien of the administrator for the payment of the debts and the expenses of administration, and the right of the administrator to present possession.''

The property of the intestate vests at once in the heir in being: Drake v. Rogers, 13 Ohio St. 21.

This proposition is sustained in the case of Brenham v. Story, 39 Cal. 179. The doctrine of this case is thus stated in the syllabus: ''Upon the death of the ancestor the heir becomes vested at once with the full property and his estate is indefeasible'': See, also, Haynes v. Meeks, 10 Cal. 110–120, 70 Am. Dec. 703.

In the case of Updegraff v. Trask, 18 Cal. 459, the court went so far as to hold that the heir, before administration, might maintain ejectment: Bufford v. Holliman, 10 Tex. 560, 60 Am. Dec. 223.

In Bates v. Howard, 105 Cal. 173, 38 Pac. 715, the supreme court said: ''The title of the heir of a deceased person to real estate owned by him does not originate in the decree of distribution, but comes to them directly from their ancestor, subject only to the control of the probate court and to the possession of an administrator appointed by the court for that purpose.''

Edward Barrett died a widower and intestate. He left one child, Mrs. Margaret Louisa Duffy. All his estate vested immediately in Mrs. Duffy. The law casts the estate upon her and without any volition on her part: Civ. Code, sec. 1386, subd. 1.

The estate vested by the single operation of law in Margaret Louisa Duffy was an estate in fee simple or an absolute fee: Civ. Code, sec. 762.

The estate so vested in Margaret Louisa Duffy, by the single operation of law, could be divested only in one of three ways:

First. In satisfaction of the debts of the ancestor and the necessary expeness of administration.

Second. By the voluntary act of Mrs. Duffy—by deed or will.

Third. By operation of law.

But Mrs. Duffy died intestate and without issue. She was at the moment of her death the legal owner of the estate which passed to her—was cast upon her in the phrase of the books—immediately upon the decease of her ancestor, Edward Barrett.

She had neither father, mother, brother nor sister, and consequently upon her death the estate descended according to the rule prescribed in section 1386, subdivision 5, of the Civil Code.

"If the decedent leave a surviving husband or wife, and neither issue, father, mother, brother, nor sister, the whole estate goes to the surviving husband or wife."

This section of the code makes the surviving husband, in the circumstances of relationship, here presented, the heir of his wife.

The descent of estates of deceased persons is purely a matter of statutory regulation. It has been well said—and this is too elementary to require the support of the authority of decided cases—that: "The right of property extends naturally no further than the life of the present possessor; after which it would by the law of nature again become common and liable to be seized by the next occupant; but society, to prevent the mischiefs that might ensue from a doctrine so productive of contentions, has established conveyances, wills and successions, whereby the property originally gained by possession is continued and transmitted from one man to another, according to the rules which each state has respectively thought proper to prescribe": 2 Bl. Com., c. 14, p. 211.

This is the principle upon which each statute of succession is founded. It is the principle which treads section 1386 of the Civil Code. John Duffy is therefore sole heir at law to his deceased wife, and the absolute legal owner of all the estate which she received as the sole heir of her deceased father.

"Section 1386 of the Civil Code," remarked the supreme court in the Estate of Pearsons, 110 Cal. 524, 42 Pac. 960, "has no allusion to the blood of the first purchaser and makes

no attempt at any distinction founded upon the sources from which the estate of the decedent may have been derived."

An heir is made such by the force of the statute. In the section of the code here considered the legislature has modified and changed the rule of the common law. It has made the surviving husband and heir—here the sole, the absolute heir.

John Duffy is, therefore, a relative of his deceased wife within a meaning of section 1365 of the Code of Civil Procedure, and being entitled to take the whole estate, both real and personal, and the whole estate having been vested in him by operation of law, is entitled to letters of administration.

In the Estate of Davis, 106 Cal. 453, 39 Pac. 756, Mr. Justice Van Fleet said: "It is to be observed that the statute makes the right of the relatives to administer to depend upon the question of their right to succeed to the personal estate or some portion thereof. And it is further to be noted that the term relatives is used in the statute in the generic sense, and so as to expressly include the husband and wife in the same category with the other relatives therein enumerated."

Williams on Executors and Administrators, volume 1, page 512, lays down what is conceived to be the true doctrine in regard to administration of the estates of deceased persons.

"The object of the statutes of administration is to give the management of the property remaining unadministered to the person who has the beneficial interest in it."

In other words, the rule to be derived from the settled policy of the law, the language of the statutes in this state and what may be fairly said to be the uniform current of judicial decision, is that administration follows the property.

If Duffy is heir to his deceased wife, by force of the statute, so by force of the same statute she is his ancestor.

If Margaret Louisa Duffy, the ancestor, was in her lifetime clothed by the law with the legal title to an estate of inheritance, upon her death it was cast upon her surviving husband and he is within the letter and the spirit of the statute—as the law-created heir and the only heir—the one person entitled to administer upon the estate.

But from another point of view the petitioner, John Duffy, is entitled to letters of administration.

Section 1365, Code of Civil Procedure, prescribes the order in which administration of the estates of deceased persons must be granted.

We have already seen that the surviving husband is by the law of this state made the heir to his wife, and that within the meaning of the statute he is her "relative" and the word "relative" is there used in the generic sense, so as to expressly include the husband and the wife in the same category with the other relatives therein enumerated.

The husband is so included in the expression "relatives" in the light of the principle that the right to administer follows the property—a principle which is of universal application in the construction of statutes of administration.

This proposition leads to a consideration of the rights of the surviving husband or wife as "next of kin."

The seventh subdivision of the section enumerates as among the relatives entitled to administer "the next of kin entitled to share in the distribution of the estate." It is obvious from the considerations heretofore presented, and, unless the petitioner, John Duffy, comes within the meaning of the term "next of kin," as used in the statute, there are no persons now in being to whom the term can, in this proceeding, be applied.

The "next of kin," within the meaning of the section, must be the "next of kin entitled to share in the distribution."

The statute of succession having, as we have seen, no relation to the blood of the first purchaser, and the right of administration being limited to those who are entitled to succession, it is obvious that, in determining who those persons are, we must resort to the statute itself, irrespective of any considerations of mere blood relationship.

Our statute has placed the husband in the position of heir to his wife, and, in this case has made him heir to property derived from her ancestor. He is therefore, for the purposes of succession and distribution, of "kin" to her; he is her "relative." This is true notwithstanding he is a stranger to her blood. The statute has for every beneficial purpose invested him with a legal status—the status of heir.

In Schuyler v. Hoyle, 5 Johns. Ch. (N. Y.) 206, Chancellor Kent held that the wife's choses in action vest in the husband by the statute of distribution as her "next of kin."

Indeed, it may be affirmed that while the word "kin" in a strict sense has been limited to relationship by blood, the word in the broad sense of our statute, must include both relations by blood and marriage. It is a familiar rule that, in the construction of statutes and other written instruments, the intention is the determining consideration, and when as in the statute under discussion, the technical words "next of kin" are qualified by the words "entitled to share in the distribution," it would seem that the plain intent of the legislature was to include within the meaning of the phrase the parties upon whom in case of intestacy, the law casts the estate—those persons entitled by operation of law to share in the distribution, whether their relationship be by blood or marriage.

The argument finds its support in the reason of the law, but the authority of decided cases is not wanting to sustain the proposition that the modern statutes contemplate a legal—a statutory kinship as well as a kinship by blood: Hibbard v. Odell, 16 Wis. 633; Betsinger v. Chapman, 88 N. Y. 487; French v. French, 84 Iowa, 655, 15 L. R. A. 300, 51 N. W. 145, where the leading cases are reviewed and the doctrine broadly affirmed; Campbell Banking Co. v. Cole, 89 Iowa, 211, 56 N. W. 441; Steele's Adm. v. Kurtz, 28 Ohio St. 191; Ferguson v. Stuart's Exrs., 14 Ohio 140; O'Donnell v. Slack, 123 Cal. 285, 43 L. R. A. 388, 55 Pac. 906.

From the earliest times the test by which legal kinship was determined seems to have been the statute of distribution. Our statute makes a capacity to share in the distribution a necessary qualification.

Redfield in his work on Wills, volume 2, page 72, thus discusses the question: "As to who are the next of kin, and as such entitled to administer, it seems to have been held by the ecclesiastical courts that it was to be the same persons entitled to the goods under the statute of distributions. . . . There is no certain rule by which to guide the discretion of the probate court in selecting among those of equal degrees of affinity as no two cases will ever be precisely alike in all their circum-

stances. But it is said they should and naturally will prefer that person in whom the greatest number and weight of interests concur."

John Duffy takes the estate of Edward Barrett as heir at law. There are but two methods known to the law by which a person may acquire real property—one by descent and the other by purchase. It is obvious that Duffy is not a purchaser and that he takes by descent.

The word "heir" is not limited in its meaning to one to whom an estate of inheritance has descended from his immediate ancestor, but a person is the heir of one from whom he has inherited by several successive descents: Castro v. Tennent, 44 Cal. 253.

Had Mrs. Duffy died a widow and intestate, leaving as her sole heir a son, it cannot be seriously questioned that the court would have unhesitatingly bestowed the administration upon that son. Such son would have been the next of kin "entitled to share in the distribution," not alone to his deceased mother but to his deceased grandfather.

The son would have been entitled because found in the line of succession established by the statute, and for no other reason. John Duffy as the law-made heir, stands in precisely the same position. The circumstance that he was not entitled to administer at the death of Edward Barrett is entirely immaterial.

It is the status of the petitioner at the time of the grant of administration that determines his competency: Estate of Pingree, 100 Cal. 78, 34 Pac. 521; Estate of McLaughlin, 103 Cal. 429, 37 Pac. 410.

The legislature has placed the surviving husband within the preferred class of statutory heirs. As such statutory heir, he is in possession of every right conferred by the statutes of succession and distribution. It cannot be said that the statute has admitted him to the class for the purpose of inheritance—in this case for the purpose of the sole inheritance—and excluded him from the right of administration, which we have seen is within the reason and the spirit of the law, inseparable from the right of property.

It cannot be seriously urged that John Duffy has not succeeded by operation of law to every right in and to the estate of Edward Barrett, held in her lifetime by his deceased wife. Mrs. Duffy was clothed by the law with the absolute right to the estate, which carried with it the right of administration. By what theory is John Duffy, her successor in interest and heir at law, to be stripped of any of the rights thus created and conferred by the law?

The true legislative intent is thus interpreted by the supreme court in the Estate of Davis, 106 Cal. 455, 39 Pac. 756.

"The principle involved in the provision of the statute restricting the right of administration to those relatives entitled to take the personal estate is not new. It is but the expression of a policy which will be found to control the statutes of many, if not most, of the states upon the subject and it is well recognized in England. It has its foundation in the consideration that administration should be committed to those who are the ultimate residuary beneficiaries of the estate—those to whom the property will go after administration."

When the office of public administrator was created there was no intent in the legislative mind to modify, restrict or alter the great rule that the administration follows the property. The creation of the office of public administrator has, so far as the relatives entitled to succession are concerned, changed no rule of law, modified no policy, abrogated no rights. The legislature has seen fit merely to create an office intermediate in its position between the relatives entitled to administer on the one hand, and the creditors of the deceased on the other. The legislature has postponed the rights of creditors in favor of the office thus called into being. Superior to the creditors because so declared by the statute, the public administrator must always give way to the relatives who are entitled to succession, provided always they are otherwise qualified by residence and capacity to assume the functions of administration.

It follows as a proposition of law, upon reason and upon authority that the petitioner, John Duffy, as the person to whom all the property left by the late John Barrett must go

at the close of the administration, is entitled to letters of administration and that his petition should be granted.

The Principle involved in this case is considered in Estate of Lakemeyer, 6 Cal. Unrep. 695, 65 Pac. 475.

See, also, 5 Cof. Prob. Dec., 376.